IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| **James R. Wood,** )<br>**Plaintiff,** )<br> )<br>v. )<br> )<br>**Harold Clarke, et al.,** )<br>**Defendants.** ) | No. 1:23cv1809 (RDA/IDD) |

## MEMORANDUM OPINION AND ORDER

James R. Wood, a Virginia inmate, has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging that his Eighth Amendment rights were violated because he did not receive adequate medical care while detained within the Virginia Department of Corrections ("VDOC") Deerfield Correctional Center, Capron, Virginia. Dkt. No. 1. Plaintiff has also applied to proceed *in forma pauperis* ("*IFP*"). Dkt. No. 3. After reviewing the related filings, Plaintiff will be granted leave to proceed *IFP*. Because plaintiff is a prisoner, however, the Court must screen his complaint to determine whether it is frivolous, malicious, or fails to state any claims upon which relief may be granted. *See* 28 U.S.C. § 1915A.[1]

---

[1] Section 1915A provides:

(a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—

  (1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or

  (2) seeks monetary relief from a defendant who is immune from such relief.

## I. Standard of Review

In reviewing a complaint pursuant to § 1915A, a district court thus applies the same standard as a Rule 12(b)(6) motion. To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if "the factual content of a complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (citation omitted). A complaint must therefore allege facts in support of each element of each claim the plaintiff raises; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Iqbal*, 556 U.S. at 678. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks and citations omitted). While a court must construe a pro se complaint liberally, a court "is not bound by the complaint's legal conclusions," conclusory allegations, or unwarranted inferences. *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009).

In order to screen a complaint, it must present a coherent, comprehensible, and intelligible document. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990) (a pleading must be presented "with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its

pages in search" of the pleader's claims "without untoward effort"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

## II. Personal Involvement

The complaint lists six defendants: Harold Clarke, Director of the VDOC; Steve Herrick, Health Services Director, VDOC; J.D. Oates, Assistant, Warden, Deerfield Correctional Center; Alvin Harris, MD; Dr. Friend, MD; and J. Schnur, RN. Dkt. No. 1 at. Plaintiff, however, does not allege any facts that establish that the three VDOC defendants (Clarke, Herrick, and Oates) had any personal involvement in either providing or depriving him of any medical services.[2] Accordingly, Plaintiff has failed to state a claim against those three VDOC defendants and his claims against Clarke, Herrick, and Oates will be dismissed.

Furthermore, to state a cause of action under § 1983, a plaintiff must allege facts indicating that he was deprived of rights guaranteed by the Constitution or laws of the United States and that the alleged deprivation resulted from conduct committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Each named defendant in a § 1983 complaint must have had personal knowledge of and involvement in the alleged violations of Plaintiff's constitutional rights for the action to proceed against that defendant. *De'Lonta v. Fulmore*, 745 F. Supp. 2d 687, 690-91 (E.D. Va. 2010).

---

[2] *See, e.g., Chamberlain v. Clarke*, No. 7:14cv13, 2014 WL 2154183, at *3 (W.D. Va. May 22, 2014) ("an inmate cannot prevail on a deliberate indifference to medical needs claim against non-medical prison personnel unless they were personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or were deliberately indifferent to a prison doctor's misconduct" and his "dissatisfaction with their responses to his grievances is a non-starter") (citing *Miltier v. Beorn*, 896 F.2d 848, 854–55 (4th Cir.1990); *Lewis v. Angelone*, 926 F. Supp. 69, 73 (W.D. Va. 1996)); *see also Land v. Clarke*, No. 7:12cv354, 2012 WL 4891625, at *3 (W.D. Va. Oct. 15, 2012) ("a supervisory official's response to a grievance alone is not sufficient to establish the supervisor's deliberate indifference to a subordinate's unlawful act or omission."); *Chacon v. Ofogh*, No. 7:08cv46, 2008 WL 4146142, at *4–5 (W.D. Va. Sept. 8, 2008) (adopting report and recommendation) (assistant warden and health services director not deliberately indifferent for denying grievances requesting free hearing aids after doctor made medical judgment; and a nurse cannot "overrule a doctor's order" denying an inmate free hearing aids).

Here, Plaintiff does not allege any act or omission on the part of Defendant Schnur, a Registered Nurse. Instead, he alleges, Schnur failed by not providing any "corrections to his improper medical care once she was notified that ('Wood') was not receiving proper, timely or adequate medical care." Dkt. No. 1 at ¶ 35. Plaintiff, however, does not allege when Schnur became aware of the alleged improper medical care and, importantly, that Schnur, a nurse, had any authority to make any change to the treatment being prescribed by the doctors treating Plaintiff. *See Camberos v. Branstad*, 73 F.3d 174, 177 (8th Cir. 1995) (no deliberate indifference where prison nurses lacked authority to refer inmate to an outside physician but acted within the scope of their authority to assist him). Accordingly, the claims against Schnur will also be dismissed for failure to state a claim.

### III. Deliberate Indifference

An Eighth Amendment claim for denial of medical care must allege facts sufficient to show that jail officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). Thus, Plaintiff must allege two distinct elements to state a claim upon which relief can be granted. First, he must allege a sufficiently serious medical need. A serious medical need is one that poses a substantial risk of serious injury to an inmate's health and safety. *Young v. City of Mt. Ranier*, 238 F.3d 567, 576 (4th Cir. 2001). Second, he must allege deliberate indifference to that serious medical need.

Under this second prong, an assertion of mere negligence or even malpractice is not enough to state an Eighth Amendment violation; instead, a plaintiff must allege deliberate indifference "by either actual intent or reckless disregard." *Estelle*, 429 U.S. at 106; *Miltier*, 896 F.2d at 851. A prisoner's disagreement with medical personnel over the course of his treatment does not make

4

out a cause of action. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Harris v. Murray*, 761 F. Supp. 409, 414 (E.D. Va. 1990). The treatment an inmate receives from a health care provider constitutes deliberate indifference only where it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier*, 896 F.2d at 851. A defendant must act with either actual intent or reckless disregard, meaning that the defendant disregarded "a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Id.* at 851-52. Further, deliberate indifference is a "higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (citing *Estelle*, 429 U.S. at 106).

Here, Plaintiff alleges that, on January 28, 2021, Dr. Friend prescribed Celebrex to treat his back pain despite his history of "('GI bleeds') and renal issues." Dkt. No. 1 at ¶ 11. Over two months later, on April 8, 2021, Plaintiff was seen by Dr. Harris for back pain, and he prescribed Ibuprofen, twice daily, which was in addition to the twice daily Celebrex that Dr. Friend had previously prescribed. *Id.* at ¶ 12. On April 30, 2021, while his foot was being treated by an unnamed nurse, Plaintiff reported having "'Black'"[] and 'Tarry' stools." *Id.* at ¶ 14. Dr. Harris "ordered that he be given hemoccult cards to check for blood in his stool." *Id.* and Dkt. 2 at 3. On May 1, 2021, Plaintiff "returned" one hemoccult card, which "tested positive for blood in his stool." Dkt. No. 1 at ¶ 15. On May 3, 2021, after all three hemoccult cards had tested positive for blood, Dr. Harris referred Plaintiff to a gastrointestinal ("GI") specialist, Dr. Rashid. *Id.* at ¶ 16. On May 4, 2021, a request for a renewal of Plaintiff's medications (which included five medications in addition to Celebrex and Ibuprofen). *Id.* at ¶ 17. Dr. Harris approved the renewal

5

on May 6, 2021. Dkt. No. 2 at 6.[3] On May 7, 2021, Plaintiff saw Dr. Sharma, who determined Plaintiff was prescribed "the wrong medications and discontinue[d] the Celebrex and [Ibuprofen] with the emph[a]sis of 'NOW,'" and ordered a blood panel to be performed to check for blood. On May 8, 2021, Dr. Sharma had Plaintiff transported to VCU where he underwent an endoscopic examination on May 10, 2021.[4] The May 8, 2021 transportation request was signed off on by Dr. Harris. Dkt. No. 2 at 10. Plaintiff "was diagnosed with Bariatric surgery status. Duodenitis and Helena (including Hematochezia)," and an unnamed doctor "noted that he should not be taking … Celebrex and Ibuprofen because it will increase" GI bleeding and prescribed "protonix."[5] *Id.* at ¶ 19. The discharge documents state the endoscopy "found" Plaintiff had an "inflammation in the duodenum."[6] Dkt. No. 2 at 19. The endoscopy also stated that the "[e]stimated blood loss was minimal." *Id.* at 14.[7] Plaintiff was prescribed Protonix, to reduce acid production that "could cause ulcer." Dkt. No. 2 at 19.

On May 19, 2021, Dr. Harris ordered a number of blood tests, and, on May 23, 2021, Dr. Sharma ordered protonix for Plaintiff. Dkt. No. 1 at ¶¶ 20–21. At some undesignated time, Dr. Harris also ordered Plaintiff receive B-12 and Folic acid supplements. *Id.* at ¶ 22. On July 14,

---

[3] Plaintiff alleges that Dr. Harris approved the renewal of his medications on May 4, 2021, but the medical records Plaintiff submitted indicated Dr. Harris did not sign the renewal request until May 6, 2021. Dkt. No. 2 at 6.

[4] The endoscopy revealed that Plaintiff had prior abdominal surgery, specifically a gastric bypass. The endoscopy was performed by Dr. Stephen J. Bickston. Dkt. No. 2 at 12–18.

[5] "Protonix is a proton pump inhibitor that decreases the amount of acid produced in the stomach." https://www.drugs.com/protonix.html (last viewed November 14, 2024).

[6] "Duodenitis is inflammation in the duodenum, the first part of the small intestine. It can cause abdominal pain, bleeding, and other digestive symptoms. Causes of duodenitis include infections, medicines, and alcohol or tobacco use." https://www.healthgrades.com/right-care/digestive-health/duodenitis (last viewed November 14, 2024).

"Melena refers to black stools, while hematochezia refers to fresh, red blood in your stool. . . . Hematochezia usually comes from the colon, while melena usually comes from a higher point in your GI tract. . . . Both melena and hematochezia are symptoms, not actual conditions." https://www.healthline.com/health/hematochezia-vs-melena (last viewed November 14, 2024).

[7] The medical records also indicate Plaintiff should "STOP taking Celecoxib [Celebrex] and Ibuprofen" because "any NSAIDS because it will increase risk of GI bleeding." Dkt. No. 2 at 19.

2021, the results of biopsies from the endoscopy established that "[n]o cancer was found," and the biopsies were "negative for H pyroli, the germ that causes ulcers." Dkt. No. 2 at 21.

On June 7, 2021, Plaintiff's medical records indicate that after the results of the endoscopy, Dr. Harris "planned" for a colonoscopy. Dkt. No 2 at 31.[8] The colonoscopy was done on October 28, 2021, and revealed Plaintiff had "internal hemorrhoids," and "diverticulosis in the sigmoid and descending colons." Dkt. No. 1 at ¶ 24. Plaintiff alleges that he "continues to have stomac[h] and GI track medical issues as a result of the Medical practitioners injuring him with a harmful[] combination of medications that burned holes in his stomach." *Id.* at ¶ 25.

In order to state a claim, an inmate must show that prison personnel "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't Crim. J.*, 239 F.3d 752, 756 (5th Cir. 2001) (citation omitted). The complaint establishes that Plaintiff was seen frequently and that his GI issue, once recognized, was treated in short order. Further, his care plan included a colonoscopy after the endoscopy did not reveal a likely source of the bleeding. Moreover, there are no factual allegations to suggest that Dr. Friend "intentionally treated [Plaintiff] incorrectly[] or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino*, 239 F.3d at 756; Thus, Plaintiff has failed to state a claim against Dr. Friend.

First, the single incident in which Dr. Friend treated Plaintiff was January 28, 2021, which was over two months before there is any indication of GI bleeding—and there was no bleeding until a few weeks after Dr. Harris had prescribed Ibuprofen on April 8, 2021. Without more, the allegations relevant to Dr. Friend do not indicate deliberate indifference on his part. *See, e.g., Lowe*

---

[8] The colonoscopy had been scheduled for "7/15/21," but was rescheduled. Dkt. No. 2 at 40.

7

*v. Davenport*, 442 F. App'x 955, 956-57 (5th Cir. 2011) (affirming dismissal of prisoner's complaint for failure to state a claim where he alleged that he suffered deleterious side effects from prescribed medications, but failed to allege any facts showing that defendants knew that he had a serious medical need *and* refused to treat that need); *see also Maldonado v. Terhune*, 28 F. Supp. 2d 284, 290 (D.N.J. 1998) ("Prescribing medication that may have side effects does not amount to 'deliberate indifference' to serious medical needs as is necessary to support a claim under *Estelle*. Indeed, even a casual glance at the Physicians' Desk Reference will make clear that most, if not all, prescription drugs have the potential of harmful side effects. What is required is that prison officials be mindful of side effects and take reasonable steps to avoid serious harm."); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976) ("[A]n inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be "repugnant to the conscience of mankind.' Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). Although Plaintiff may have a claim of negligence or malpractice with regard to Dr. Friend, he has failed to state a claim of deliberate indifference. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) ("Negligence or malpractice in the provision of medical services does not constitute a claim under § 1983" because such claims fail to satisfy the deliberate indifference standard of a constitutional claim).

Dr. Harris had a greater degree of involvement in providing Plaintiff medical care in 2021, which included prescribing Ibuprofen, a nonsteroidal anti-inflammatory drug ("NSAID"), on April 8, 2021; and the renewal of the prescriptions for the NSIAD's Ibuprofen and Celebrex on May 6, 2021. Plaintiff alleges he had a history of "GI bleeds" when Dr. Harris prescribed the NSIADs. Plaintiff was given three stool sample cards on April 30, 2021 and he returned a stool sample card

on May 1, 2021 that indicated the presence of blood, and the nurse referred him to a provider, and he was given three stool sample cards. Dkt. No. 2 at 3-5. On May 4, 2021, after the sample cards indicated the presence of blood, Dr. Harris referred Plaintiff "to the onsite ('GI') specialist, Dr. Rashid." Dkt. No. 1 at ¶ 16. Like Dr. Friend, however, there is nothing to establish that Dr. Harris "intentionally treated [Plaintiff] incorrectly[] or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino*, 239 F.3d at 756. While Dr. Harris did prescribe Ibuprofen on April 8, 2021 and he renew the prescriptions for Celebrex and Ibuprofen on May 6, 2021, those medications were discontinued the next day later on May 7, 2021.

Plaintiff underwent an endoscopy on May 10, 2021, but there also was no definitive diagnosis of Plaintiff's condition until the colonoscopy on October 28, 2021, which revealed "internal hemorrhoids," and "diverticulosis in the sigmoid and descending colons" Dkt. No. 1 at ¶ 24. Importantly, there is no indication that, after the sample cards had indicated the presence of blood and Dr. Harris made the referral for a GI specialist on May 4, 2021, the delay in discontinuing the NSIAD prescriptions until May 7, 1021 resulted in any additional harm to Plaintiff. While delay of, or interference with, medical treatment can also amount to deliberate indifference, *Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006), there is no Eighth Amendment violation

> unless "the delay results in some substantial harm to the patient," such as a "marked" exacerbation of the prisoner's medical condition or "frequent complaints of severe pain." *See Webb v. Hamidullah*, 281 F. App'x 159, 166-67 (4th Cir. 2008) (emphasis added); *see also Sharpe v. S.C. Dep't of Corr.*, 621 F. App'x 732, 734 (4th Cir. 2015) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." (internal quotation marks omitted)).

*Formica*, 739 F. App'x at 755. Substantial harm may also be "'a life-long handicap or permanent loss.'" *Coppage v. Mann*, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting *Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). "[T]he length of delay that is tolerable

9

depends on the seriousness of the condition and the ease of providing treatment." *Id.* at 758 (quoting *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)) (emphasis added).

The delay in this case was approximately, at most, three days one day before the Celebrex and Ibuprofen were discontinued after the sample cards confirmed the presence of blood in Plaintiff's stool. The allegations in the complaint do not establish that the delay in this case resulted in substantial harm to Plaintiff. Thus, Plaintiff has failed to state a claim of deliberate indifference against Dr. Harris as well.

Accordingly, it is hereby

**ORDERED** that the complaint be and is **HEREBY DISMISSED** without prejudice, to allow Plaintiff to file an amended complaint in compliance with the requirements of this order; and it is

**FURTHER ORDERED** that Plaintiff particularize and amend his Complaint within thirty (30) days of the date of this Order using the enclosed standardized §1983 complaint form by (i) naming every person he wishes to include as a defendant, (ii) identify each claim he seeks to raise by letter or number, (iii) submitting a short, detailed statement of background facts which describes the specific conduct of each defendant whom he alleges violated his constitutional rights, including the facts giving rise to his complaint, the dates of each incident, the persons involved, the reasons why he believes each defendant is liable to him, the remedies sought, and (iv) curing the deficiencies noted herein. Plaintiff must reallege all the facts from the original complaint in the amended complaint, and he must include his civil action number, **1:23cv1809 (RDA/IDD)**, on the first page of his amended complaint. Plaintiff is advised that this amended complaint will serve as the sole complaint in this civil action; and it is

**FURTHER ORDERED** that plaintiff's failure to comply with any part of this Order within thirty (30) days from the entry of this Order, or failure to notify the Court immediately upon

10

being transferred, released, or otherwise relocated, may result in the dismissal of this complaint pursuant to Federal Rule of Civil Procedure 41(b).

The Clerk is directed to send a copy of this Order and a § 1983 form to Plaintiff institution.

Entered this __20__ day of __November__ 2024.

Alexandria, Virginia

/s/
Rossie D. Alston, Jr.
United States District Judge